UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Russell Eugene Wolf,<br><br>Petitioner,<br><br>v.<br><br>Warden J. Fikes, or acting warden,<br><br>Respondent. | Case No. 20-cv-2339 (JRT/HB)<br><br>**REPORT AND RECOMMENDATION** |

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Petitioner Russell Wolf's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1]. Wolf alleges that certain disciplinary sanctions he received violated his constitutional rights of due process and equal protection. (*Id*. at 7–8.) Wolf seeks expungement of the incident report, refund of the monetary fine, and restoration of some of his good conduct time. (*Id*. at 3, 9.) Respondent Warden J. Fikes filed his response on February 3, 2021. [ECF No. 11.] The Court respectfully recommends that the Petition be denied in its entirety.

**I.   Background**

Wolf is an inmate at the Federal Correctional Institute in Sandstone, Minnesota. (Kensy[1] Decl. ¶ 7 [ECF No. 12].) This matter arises out of an incident that occurred on December 28, 2019, when a prison officer saw another inmate, JB, giving Wolf a tattoo

---

[1] Heather Kensy is a Unit Manager at FCI Sandstone and became an Alternate Disciplinary Hearing Officer (DHO) in 2019. (Kensy Decl. ¶ 1.) Kensy conducted the DHO hearing and issued the sanctions that are the subject of the Petition. (*Id*. ¶ 12.)

on his left arm. (*Id.* ¶ 9; Resp.'s Ex. D at 1 [ECF No. 12-4].) Tattooing or self-mutilation is a "high severity level prohibited act." 28 C.F.R. § 541.3. The officer ordered JB to cease his activities and hand over the tattoo paraphernalia, which he did. (*Id*. ¶ 9.) Both inmates were escorted to the Lieutenant's office, where Wolf gave a statement that in fact he had two new tattoos, one on his arm and one on his chest—both from JB. (Kensy Decl. ¶ 10; Resp.'s Ex. D at 2.) The investigating officer advised Wolf of his rights during the disciplinary process and provided Wolf a copy of the incident report. (Kensy Decl. ¶¶ 9–10.)

The Unit Disciplinary Committee (UDC) conducted an initial hearing on the Incident Report, during which Wolf agreed with the report, saying "that's what happened." (Kensy Decl. ¶ 11.) The UDC then referred the matter to a Disciplinary Hearing Officer (DHO), Heather Kensy, for a follow-up hearing. (*Id*.) Wolf was advised of his rights and was given an opportunity to request witnesses and a staff representative, but Wolf waived his rights and declined to call any witnesses. (*Id*.; Exs. E, F [ECF Nos. 12-5, 12-6].)

At the hearing, DHO Kensy reviewed the incident report and photographs of Wolf's tattoos. (Kensy Decl. ¶ 12; Resp.'s Ex. G [ECF No. 12-7].) Wolf admitted to the charge, but offered as a defense the following statement: "No comment except for the fact that they didn't actually catch us in the act. It was after the fact." (Resp.'s Ex. G at 2.) Based on this evidence, the DHO found that Wolf committed the prohibited act and sanctioned him to a loss of 27 days of good conduct time, 60 days loss of commissary privileges, and a $100.00 monetary fine. (Kensy Decl. ¶ 12.) Wolf received a copy of

the DHO's report with these findings on January 22, 2020. (*Id.*) Wolf then filed a Regional Administrative Remedy Appeal, which was denied. (Pet.'s Ex. 1 [ECF No. 1-1].) Wolf appealed that denial, and his appeal was again denied. (Pet.'s Ex. 2 [ECF No. 1-2].)

Wolf filed his petition for writ of habeas corpus on November 16, 2020, alleging that his due process and equal protection rights were violated because the sanctions imposed by the DHO were arbitrary and capricious. (Pet. at 6.) Wolf also argues the sanctions are unconstitutional because they were more severe than sanctions other inmates received for the same or similar offenses, and because the monetary sanctions are improper under BOP policy. (*Id.* at 7–8.)

## II.   Discussion

"The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The essence of a habeas petition is an attack by a person in custody upon the legality of the custody. *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996); *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is not limited to immediate release from illegal custody, but the writ is available to obtain future releases, like shortening the length of actual confinement. *See Preiser*, 411 U.S. at 487. A § 2241 habeas petition is the proper way to challenge sanctions that affect the length of an inmate's detention. *Id.* However, to the extent the inmate is challenging sanctions that do not affect the length of the detention, a habeas petition is not the proper remedy. *Kruger*, 77 F.3d at 1073.

Among the requested relief Wolf seeks is to have the incident report expunged and to have the $100 monetary fine[2] returned to him. (Pet. at 9.) A habeas petition is not the appropriate vehicle to challenge sanctions that do not affect the length of detention. *Kruger*, 77 F.3d at 1073 ("It is the substance of the relief sought which counts. Where petitioner seeks a writ of habeas corpus and fails to attack the validity of his sentence or the length of his state custody, the district court lacks the power or subject matter jurisdiction to issue a writ.") Insofar as Wolf's petition seeks such relief, the Court lacks jurisdiction to review the claims. Accordingly, it will recommend dismissal on these points.

Wolf's petition also raises a claim that his prison sentence was unconstitutionally lengthened—by virtue of his losing 27 days of good conduct time—which *is* a cognizable claim in a § 2241 habeas petition. *See Preiser*, 411 U.S. at 487. Accordingly, the Court moves forward to the merits of that claim.

## A. Due Process Considerations

Since the deprivation of good conduct time implicates a liberty interest, a prisoner must be afforded minimum due process. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 453 (1985). Wolf's claim seems focused on the inadequacy of the procedure by which he was sanctioned (*see* Pet. at 7 ("The proceedings violated my due

---

[2] Under prison policy, the DHO may fine an inmate a maximum of $300 or 50% of the inmate's trust account balance for committing a high severity level offense. (Kensy Decl. ¶ 14.) When Wolf's fine was assessed he had a trust account balance of $120.41, so the maximum amount he could be fined was only $60. (*Id.*) Respondent acknowledges that Wolf's monetary sanction of $100 was thus erroneously calculated and states that his trust account will be credited $40. (*Id.*)

process rights. . . .") (emphasis added)), but the Court liberally construes the Petition to allege both procedural and substantive violations. The Court turns first to Wolf's procedure-based claim.

An inmate subject to the loss of good conduct time as a disciplinary sanction is afforded due process when he receives: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institution safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Hill*, 472 U.S. at 454; *see also Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974); *Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007). The advance written notice must be adequate to enable an inmate to marshal the facts and prepare a defense. *Wolff*, 418 U.S. at 564; *Freitas v. Auger*, 837 F.2d 806, 809 (8th Cir. 1988). The written notice should also provide the inmate notice of at least some of the specific facts underlying the accusation. *Dible*, 506 F.3d at 1110.

The Court concludes the DHO process satisfies the requirements established by the Supreme Court, and that Wolf was afforded the process he was due. First, he received advance written notice of the disciplinary charges when he received a copy of the incident report on December 29, 2019. (Kensy Decl. ¶ 9.) The Court has reviewed the incident report (Resp.'s Ex. D) and has determined that it describes the specific facts underlying the charge sufficiently to enable Wolf to prepare a defense. This process satisfies the first *Hill* requirement.

Wolf was likewise provided an opportunity to call witnesses and present evidence

in his defense at his hearing on January 3, 2020. (Kensy Decl. ¶ 12; Resp.'s Ex. F.) Although Wolf apparently declined to call witnesses or present evidence in his defense (*see* Exs. F, G), the opportunity to do so still satisfies the second *Hill* requirement.

The DHO issued a report on January 20, 2020, describing the reasons for the disciplinary action and the evidence she relied on in making her determination. (Kensy Decl. ¶ 12; Resp.'s Ex. G.) Wolf received a copy of that report on January 22, 2020. (Kensy Decl. ¶ 12.) Because Wolf was provided a written statement by the factfinder describing the evidence relied on and the reasons for the disciplinary action, the DHO process has satisfied the third *Hill* requirement. The Court therefore concludes that the process employed here satisfied procedural due process.

The Court also understands Wolf to allege a substantive due process violation, so it turns to that claim next. Prison officials have discretion to impose disciplinary sanctions, such that the Court is only permitted to review such decisions when they amount to "an unreasonable or arbitrary exercise of such discretion." *Glouser v. Parratt*, 605 F.2d 419, 420–21 (8th Cir. 1979). Moreover, the Eighth Circuit has made it clear that "inmates' interests must be balanced . . . with the government's interest in assuring inmates' safety and in avoiding burdensome administrative requirements that might be susceptible to manipulation." *Brown v. Nix*, 33 F.3d 951, 954 (8th Cir. 1994) (quotations omitted).

Wolf was found to have committed a "high severity level violation," *see* 28 C.F.R. § 541.3(b), Table 1, and was sanctioned with the loss of 27 days of good conduct time, among other sanctions. According to prison policy, a DHO must deduct a minimum of

6

27 days of good conduct time for each high severity level offense, or, if the inmate has less than 54 days available, then the DHO must deduct 50% of the available good conduct time. (*See* Resp.'s Ex. A at 11 [ECF No. 12-1].) Wolf had accrued more than 54 days of good conduct time at the time of the incident. (*See* Resp.'s Ex. B at 3 [ECF No. 12-2] (listing "total GCT earned" at 108).) Wolf's loss of 27 days of good conduct time was therefore in keeping with prison policy. Wolf's substantive due process claim—if present at all—is conclusory at best, and the Court finds no basis in the record to conclude that the 27-day penalty, which was the minimum penalty prescribed by the policy for a "high severity level violation," or the policy itself, was "excessive" or "arbitrary or unreasonable." *See Glouser*, 605 F.2d at 420–21; *Minhas v. Birkholz*, Case No. 20-cv-0061 (JRT/DTS), 2021 WL 769455, at *5 (D. Minn. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 766719 (D. Minn. Feb. 26, 2021); *Hewlett v. Warden, FMC Rochester*, Case No. 18-cv-2293 (WMW/LIB), 2019 WL 3557628, at *5 (D. Minn. Apr. 30, 2019), *report and recommendation adopted*, 2019 WL 3553411 (Aug. 5, 2019). Finding neither a procedural nor a substantive due process violation, the Court recommends denying the Petition on due process grounds.

      **B.**     **Wolf's Equal Protection Claim**

Wolf also alleges that his equal protection rights were violated because the sanctions he received were "so severe in comparison to other prisoners charged with the same or similar conduct that they violated the constitution." (Pet. at 7–8.) Wolf's claim is not supported by the evidence. To allege a violation of equal protection rights, a claimant must show that he is a member of a protected class and that a fundamental right

7

was violated, or that a similarly situated class of inmates are treated differently, and this different treatment bears no rational relation to any legitimate penal interest. *See* U.S. Const. amend. XIV; *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998). In either case, the inmate must also show intentional or purposeful discrimination. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 733 (8th Cir. 1994).

Wolf has not alleged that he is a member of a protected class and there is no evidence before the Court to support that inference. Wolf has also not provided any evidence that he was treated differently from similarly situated inmates, that his sanctions were not rationally related to a legitimate penal interest, or that the sanctions were intentionally discriminatory. Although he conclusorily states that other inmates received lesser sanctions for similar violations, Wolf offers no additional information to support that claim. On this record, the Court cannot conclude Wolf's sanctions amounted to an equal protection violation.

### III. Conclusion

The Court concludes that Wolf's disciplinary proceedings were constitutionally adequate. It also concludes that deducting Wolf's good credit time was not unreasonable or arbitrary, and was not a violation of Wolf's equal protection rights. The other sanctions Wolf received do not affect the length of his detention and are therefore not reviewable here.

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Russell Wolf's Petition for a Writ of

Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1] be **DENIED** in its entirety.

Dated: April 5, 2021                          <u>s/ *Hildy Bowbeer*</u>
                                              HILDY BOWBEER
                                              United States Magistrate Judge

**NOTICE**

The Court's Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set forth in LR 72.2(c).