UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| RUSSELL EUGENE WOLF,<br><br>Petitioner,<br><br>v.<br><br>WARDEN J. FIKES, *or Acting Warden, FCI Sandstone*,<br><br>Respondent. | Civil No. 20-2339 (JRT/HB)<br><br>**MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION** |

Russell Eugene Wolf, BOP Reg. No. 47176-044, FCI Sandstone, P.O. Box 1000, Sandstone, MN 55072, *pro se*;

Ana H. Voss, Ann M. Bildtsen, and Chad A. Blumenfield, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for respondent.

Petitioner Russell Eugene Wolf filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, alleging a violation of his constitutional rights to due process and equal protection. Wolf alleges that sanctions imposed by the BOP as a result of a disciplinary action were arbitrary and unreasonable, and argues that his sanctions were more severe than those issued to similarly situated inmates. Magistrate Judge Hildy Bowbeer recommended the petition be denied in a Report and Recommendation ("R&R"). Wolf objected to the R&R's conclusion that he had failed to state a colorable equal protection claim. Because the Court finds that Wolf has not alleged that he received

a higher sanction as a result of discriminatory intent or that his sanction is unrelated to legitimate penal interests, his equal protection claim cannot be sustained. Accordingly, the Court will adopt the R&R, overrule the objections, and deny Wolf's petition.

**I.     BACKGROUND**

Wolf is incarcerated at the Federal Correctional Institute in Sandstone, Minnesota. (Petition at 1, Nov. 16, 2020, Docket No. 1.)  On December 28, 2019, a prison officer observed another inmate tattooing Wolf in violation of Bureau of Prisons Code 228, which forbids "tattooing and self-mutilation," and is a high severity offense.  (*See* 28 C.F.R. § 541.3; Decl. of Heather Kensy ("Kensy Decl.") ¶ 9, Ex. D ("Incident Report") at 1, Feb. 3, 2021, Docket No. 12-4).  The officer ordered the inmates to cease their actions and surrender the tattoo paraphernalia.  (Incident Report at 1; Kensy Decl. ¶ 9, Feb. 3, 2021, Docket No. 12.)

Upon questioning, Wolf stated that he had received two new tattoos within the week.  (Incident Report at 2; Kensy Decl. ¶ 10.)  The Unit Discipline Committee ("UDC") held an initial hearing on December 30, 2019, at which Wolf stated, "[t]hat's what happened," when asked about the conduct alleged in the incident report.  (Incident Report at 1.)  Wolf was honest and cooperative throughout the UDC investigation.  (*Id.* at 2.)  UDC then referred the matter to the Disciplinary Hearing Officer ("DHO").  (*Id.*)  In proceedings before the DHO, inmates have the right to be represented by a staff member, call witnesses, and prepare a defense.  (Kensy Decl. ¶ 11, Ex. E ("Inmate Rights") at 1, Feb.

3, 2021, Docket No. 12-5.) Wolf acknowledged notice of these rights on December 30, 2019. (*Id.*)

At the disciplinary hearing, Wolf waived his right to a staff representative and declined to provide any witnesses. (Kensy Decl. ¶ 11, Ex. F at 1, Feb. 3, 2021, Docket No. 12-6.) Wolf admitted to the charge before the DHO and stated in his defense, "[n]o comment, except for the fact that they didn't actually catch us in the act. It was after the fact." (Kensy Decl. ¶ 12, Ex. G at 1, Feb. 3, 2021, Docket No. 12-7.) Relying on Wolf's statements, the officer's statement, and photographs of the tattoos and tattoo paraphernalia, the DHO found that the act was committed as charged and imposed sanctions consisting of the loss of 27 days of good conduct time, the loss of commissary privileges for 60 days, and a $100 monetary fine. (*Id*. at 2; Kensy Decl. ¶ 12)

Wolf twice appealed the disciplinary sanctions; both appeals were denied. (*See* Petition at 2–3; Petition, Ex. A, Nov. 16, 2020, Docket No. 1-1; Petition, Ex. B, Nov. 16, 2020, Docket No. 1-2.)

On November 16, 2020, Wolf filed a petition for a writ of habeas corpus alleging due process and equal protection violations, and asking the Court to expunge the incident report, restore some or all of his forfeited good conduct time, and order that the $100 fine be returned. (Petition at 6–8.) Magistrate Judge Hildy Bowbeer issued a Report and Recommendation ("R&R"), concluding that a habeas petition was not the proper vehicle to address Wolf's requests for monetary damages and expungement of the incident

report because such sanctions did not affect the length of his detention. (R&R at 4, Apr. 5, 2021, Docket No. 14). With regard to the loss of good conduct time, Judge Bowbeer concluded that the disciplinary proceedings were constitutionally adequate, Wolf's sanctions were not unreasonable or arbitrary, and Wolf had not alleged a colorable equal protection violation. (*Id.* at 8.) Judge Bowbeer recommended that Wolf's Petition therefore be denied in its entirety. (*Id.* at 8–9.) Wolf filed timely objections. (R&R Obj., Apr. 26, 2021, Docket No. 17.)

## DISCUSSION

### I. STANDARD OF REVIEW

After a magistrate judge files an R&R, a party may file "specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1). "The objections should specify the portions of the magistrate judge's report and recommendation to which objections are made and provide a basis for those objections." *Mayer v. Walvatne*, No. 07–1958, 2008 WL 4527774, at *2 (D. Minn. Sept. 28, 2008). For dispositive motions, the Court reviews *de novo* a "properly objected to" portion of an R&R. Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3). "Objections which are not specific but merely repeat arguments presented to and considered by a magistrate judge are not entitled to *de novo* review, but rather are reviewed for clear error." *Montgomery v. Compass Airlines, LLC*, 98 F. Supp. 3d 1012, 1017 (D. Minn. 2015).

II.     ANALYSIS

Wolf raises one objection based on the R&R's conclusion that the equal protection violations alleged in the Petition were unsupported by evidence. Wolf argues that he submitted an exhibit in which he listed three inmates by name and number who resided in the same unit and received tattoos in the same timeframe, but who received less severe sanctions than Wolf.[1]

To establish an equal protection violation, Wolf must show that he has been "treated differently from similarly-situated inmates and that the different treatment is based upon either a suspect classification or a fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815–16 (8th Cir. 2008) (quotation omitted). Because Wolf does not allege that he is a member of a protected class, he must show that his differential treatment compared to similarly situated inmates "bears no rational relation to any legitimate penal interest," and that the sanction was intentionally discriminatory. *Phillips v. Norris*, 320 F.3d 844, 848 (8th Cir. 2003) (quotation omitted).

Wolf has not provided evidence that the other inmates he identified are similarly situated to him; however, even if the Court assumes that they are, Wolf has not alleged,

---

[1] Wolf identifies three inmates by BOP Register Number who allegedly committed similar offenses, but received less severe sanctions for a first-time offense. (*See* Petition, Ex. A at 1, Nov. 16, 2020, Docket No. 1-1.) Wolf asserts that Inmate #1 received a sanction of 60 days commissary restriction, loss of 14 days good time credit, and no fine; Inmate #2 received 60 days commissary and email restriction, loss of 14 days good time credit, and no fine; Inmate #2 received a warning for his first offense and for his second offense received 60 days commissary restriction and loss of 28 days good time credit. (*Id.*)

and the record does not demonstrate, that the sanctions imposed are divorced from a legitimate penal interest. On the contrary, Wolf's sanctions—along with the sanctions he alleges other inmates received—fall squarely within the range of permissible sanctions for high severity level offenses. *See* 28 C.F.R. § 541.3, T.1 (permitting sanctions including loss of 14 to 27 days of good time credit, monetary fines, and loss of privileges such as commissary).

Further, to sustain an equal protection claim, the record must show that Wolf received a more severe sanction for discriminatory reasons, and Wolf has submitted no evidence of discriminatory intent by DHO or BOP officials. *Klinger v. Dept. of Corrections*, 31 F.3d 727, 733 (8th Cir. 1994) ("A fundamental principle of equal protection is that the Constitution only prohibits intentional or purposeful discrimination by the state."). Absent a showing of discriminatory intent or purpose, Wolf's equal protection claim cannot survive.[2] The Court will therefore overrule Wolf's objections to the R&R and adopt the R&R in full.

---

[2] Wolf also requests that the other identified inmates' disciplinary records be made available to him so that he may prove his equal protection claim. However, because Wolf's claims fail on other grounds, the Court finds that allowing Wolf to discover the requested evidence would be futile. *See Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994) ("[P]etitioner is not entitled to [an evidentiary] hearing where the record clearly indicates that his claims are either barred from review or without merit.").

**ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Petitioner's Objections to the R&R [Docket No. 17] are **OVERRULED;**

2. The R&R [Docket No. 14] is **ADOPTED** ; and

3. Wolf's Petition for Writ of Habeas Corpus [Docket No. 1] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: July, 29, 2021                                  _____
at Minneapolis, Minnesota.                                    JOHN R. TUNHEIM
                                                                              Chief Judge
                                                                  United States District Court